# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| VINSON GRIFFIN, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-813 HEA |
| | ) |
| DR. KENT MCNUTT, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the motion of self-represented plaintiff Vinson Griffin, Jr. for leave to commence this civil action without prepayment of the required filing fee. ECF No. 2. Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $17.90. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will issue process on plaintiff's individual capacity claims against defendants Dr. Kent McNutt, Dr. Jerry Lovelace, and Nurse Practitioner Angela Adams. The remaining claims against defendants Nurse Practitioner Brett Ferguson and Nurse Practitioner Karen Rose will be dismissed. Additionally, plaintiff's request for counsel will be denied at this time.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After

payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion for leave to proceed *in forma pauperis*, plaintiff submitted a copy of his certified inmate account statement. ECF No. 3. A review of plaintiff's account from the relevant period indicates an average monthly deposit of $89.50 and an average monthly balance of $55.55. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $17.90, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded

facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Self-represented plaintiff, an inmate at the Eastern Reception Diagnostic and Correctional Center ("ERDCC"), filed this action on August 3, 2022 on a Court-provided 'Prisoner Civil Rights Complaint' form pursuant to 42 U.S.C. § 1983. ECF No. 1. Plaintiff names five defendants in their individual capacities only: (1) Dr. Kent McNutt, (2) Dr. Jerry Lovelace, (3) Nurse Practitioner Angela Adams, (4) Nurse Practitioner Karen Rose, and (5) Nurse Practitioner Brett Ferguson. All defendants are alleged to be employees of Corizon Health, Inc., which contracts with the Missouri Department of Corrections to provide medical services.

Plaintiff asserts he was diagnosed with right leg osteosarcoma while he was incarcerated at ERDCC in February of 2016. Shortly after diagnosis, plaintiff was released on parole. He

underwent chemotherapy treatment and "lost part of [his] right leg." By September of 2017, plaintiff's osteosarcoma was in remission.

In February of 2020, plaintiff was arrested and subsequently incarcerated at the St. Louis Justice Center. Around this time, plaintiff's oncologist discovered that his osteosarcoma spread to his left leg. Consequently, plaintiff began a second round of chemotherapy at Barnes Jewish Hospital. On March 7, 2020, plaintiff was transferred back to ERDCC. Upon arrival, plaintiff informed the intake nurse, who is not a defendant in this action, of his diagnosis and need for monitoring. Plaintiff states she immediately placed him on the "chronic care roster."

On April 9, 2020, plaintiff saw defendant Nurse Practitioner ("NP") Brett Ferguson. Plaintiff claims this was his first contact with a medical professional since he arrived at ERDCC. During the visit, plaintiff complained to NP Ferguson that he should have been seen sooner and told him he was experiencing pain in his left leg. NP Ferguson provided plaintiff with Tylenol and ordered an X-ray for his lower extremities. *Id.*

On April 30, 2020, NP Ferguson reviewed the X-ray results and informed plaintiff he was "requesting a referral from his superiors (Utilization Management Team) to send [him] out for a[n] MRI to be done on [his] legs because the [X]-rays were concerning to him and he wanted clarification as to what he was dealing with." The MRI was performed on May 21, 2020. Plaintiff asserts NP Ferguson "informed Dr. McNutt of the severity of [his] health conditions as a result from the MRI." Around this time, plaintiff claims he asked NP Ferguson to see a "mental health expert about depression," but NP Ferguson failed to provide him with a referral.

On June 10, 2020, plaintiff spoke to ERDCC's Warden to express concern that he had not been scheduled for a follow-up appointment. On the same day, plaintiff was brought to NP Angela Adams. Plaintiff reported pain in his left leg and told her that he believed his cancer was returning.

4

Plaintiff claims NP Adams did not examine him or provide him with a referral. Instead, she told him "someone would probably see [him] in the future." Plaintiff responded by telling her he needed immediate medical attention but "[s]he just looked at [him] and said nothing."

Plaintiff claims he did not receive another medical appointment until September 9, 2020 when his left tibia and fibula spontaneously "snapped in half" while he was standing. Plaintiff was subsequently provided with another round of chemotherapy and, on January 4, 2021, his left leg was amputated above his knee.

After the amputation, defendant Dr. Lovelace denied him a suitable prosthetic. Plaintiff alleges Dr. Lovelace "approved an antiquated and used prosthesis that had to be carved on and sanded to fit [his] stump." Plaintiff claims the prosthetic was "designed for a person whose height is 5' 3" – but [he is] 5' 9" tall." He alleges the ill-fitting prosthetic caused him to become wheelchair-bound and, as a result, has "developed very painful boils-sores on [his] rectum due to prolonged periods in [his] chair." Plaintiff further complains he has been suffering from "ongoing infections with [his] leg-stump" because Dr. McNutt and NP Adams "routinely deny [his] requests to find out why the infections are chronic."

In January of 2022, plaintiff states he was folding clothes in Administrative Segregation when NP Karen Rose approached him. Plaintiff alleges she said the following:

> You ought to sue that b-tch Adams, because she almost let you die. We all knew about your cancer from the day you got here. The employees working in Corizon Health at the St. Louis Justice Center and here all know each other. We were sent your file and we knew you were sick. All Adams is concerned about is brushing her hair and putting makeup on. Sue that bitch! You hear? She almost killed you.

Compl. ¶ 19. Plaintiff states he is bringing this action against NP Rose because, by her own admission, she knew of his condition and did not act. He does not allege, however, that NP Rose ever treated him herself or saw him as a patient.

5

Plaintiff claims that because of the failure of defendants to provide him with adequate medical care and take reasonable action to treat his cancer, his leg was unnecessarily amputated and he is permanently disabled. He further asserts that the care he received after the amputation has been inadequate as he is now confined to a wheelchair due to the ill-fitting prosthetic. Plaintiff seeks declaratory and injunctive relief, approximately $500,000 in compensatory damages, and over $1 million in punitive damages.

**Discussion**

The Eighth Amendment obligates state prison officials to provide inmates with medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A prison official's deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Alberson v. Norris*, 458 F.3d 762, 765-66 (8th Cir. 2006). A prima facie case alleging deliberate indifference requires the inmate-plaintiff to demonstrate that he suffered from an objectively serious medical need and the "prison officials actually knew of but deliberately disregarded" that need. *Id.* Medical malpractice alone, however, is not actionable under the Eighth Amendment. *Smith v. Clark*, 458 F.3d 720, 724 (8th Cir. 2006).

For a claim of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, to state a claim against defendants, plaintiff must allege his condition was objectively serious and the defendants deliberately disregarded any need of which they were aware.

### I. Dr. Kent McNutt

Plaintiff's medical care claim against defendant Dr. McNutt states a plausible claim for relief under § 1983. Plaintiff alleges Dr. McNutt reviewed X-rays of his lower extremities on or around April 30, 2020 and personally noted that the results appeared "suspicious for a malignancy and suggest[ed] an MRI." Compl. ¶ 10. Plaintiff asserts Dr. McNutt was made aware of the MRI results revealing a lesion and knew about his medical history of osteosarcoma as well as his continued complains of leg pain. *Id.* ¶ 12.

Plaintiff contends that despite Dr. McNutt's knowledge of his medical condition and concerning radiological results, he failed to schedule an appointment to see him or provide him with a referral to see an oncologist or other specialist. *Id.* Plaintiff states that due to Dr. McNutt's lack of treatment, his left tibia and fibula "snapped completely in half," which required amputation from above his knee. *Id.* ¶ 15-16. Plaintiff further alleges he suffered from "ongoing infections with [his] leg-stump" because Dr. McNutt would "routinely deny [his] requests to find out why the infections are chronic." *Id.* ¶ 18.

At this stage of the litigation, plaintiff has adequately alleged that his osteosarcoma was a serious medical condition, Dr. McNutt was aware of the serious medical condition, and he failed to treat. As a result, the Court will direct the Clerk to serve process on defendant Dr. Kent McNutt in his individual capacity.

### II. Nurse Practitioner Brett Ferguson

Plaintiff alleges he saw defendant NP Ferguson on April 9, 2020. Compl. ¶ 9. During the visit, plaintiff complained about pain in his lower left extremity and expressed his belief that he should have been seen by medical sooner. *Id.* Plaintiff does not allege that NP Ferguson was responsible for the scheduling of medical visits or that he even knew plaintiff was waiting to see a

7

physician. During the visit, NP Ferguson provided plaintiff with Tylenol and ordered an X-ray for both of his lower extremities. *Id.*

On April 30, 2020, NP Ferguson reviewed the X-ray results and told plaintiff he was "requesting a referral from his superiors (Utilization Management Team) to send [him] out for a[n] MRI to be done on [his] legs because the [X]-rays were concerning to him and he wanted clarification as to what he was dealing with." *Id.* ¶ 10. An MRI was performed on May 21, 2020. *Id.* ¶ 11. Plaintiff asserts NP Ferguson "informed Dr. McNutt of the severity of [his] health conditions as a result from the MRI." *Id.* ¶ 12. Plaintiff does not allege that NP Ferguson failed to treat his osteosarcoma at any time. To the contrary, plaintiff's complaint reflects that NP Ferguson was responsive to his needs, treated his cancer accordingly by seeking a referral for an MRI, and by informing his supervisor, Dr. McNutt, of the MRI results. As a result, plaintiff has failed to plausibly allege a deliberate indifference claim against NP Ferguson.

To the extent plaintiff asserts NP Ferguson denied him mental health treatment, such an allegation fails to state a claim for deliberate indifference. Plaintiff alleges that he "repeatedly" asked "to see a mental health expert about depression," but NP Ferguson "never once made a referral to mental health to get [him] any psychological help." *Id.* ¶ 21. Deliberate indifference may be found when prison officials intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 104-05. Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Id.* at 106. Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference to a prisoner's serious medical needs. *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008). While inmates have a right to adequate medical care, they have no "right to receive a particular or requested course of treatment." *Dulany*, 132 F.3d at 1239.

8

Plaintiff's allegations do not establish that NP Ferguson was deliberately indifferent to his mental health needs. Although plaintiff claims he "repeatedly" told NP Ferguson that he wanted to see a mental health expert about depression, he does not describe the symptoms he was experiencing, assert when he allegedly made such requests for a referral, or describe how NP Ferguson responded. As stated above, conclusory allegations that a medical professional did not supply medical treatment is not sufficient to survive initial review. "It is not enough to allege that [a] 'defendant[ ]' refused to treat his injuries. A federal complaint must contain the 'who, what, when and where' of what happened, and each defendant must be linked to a particular action." *Drummer v. Corizon Corr. Health Care*, 2016 WL 3971399, at *1 (E.D. Mo. July 25, 2016); *see also Miles v. Corizon Healthcare*, 2019 WL 2085998, at *4 (E.D. Mo. May 13, 2019) (a general refusal to treat allegation, without any additional information, is nothing more than a conclusory statement and cannot suffice to state a cause of action under the Eighth Amendment).

Thus, NP Ferguson will be dismissed from this action for plaintiff's failure to state a claim against him in his individual capacity.

### III. Dr. Jerry Lovelace

Plaintiff alleges Dr. Lovelace, who he describes as the "Utilization Management Director/Specialist," "approved an antiquated and used prosthesis that had to be carved on and sanded to fit [his] stump." Compl. ¶ 17. Plaintiff claims the prosthetic was "designed for a person whose height is 5' 3" – but [he is] 5' 9" tall." *Id.* Plaintiff alleges the ill-fitting prosthetic caused him to be wheelchair-bound and, as a result, he "developed very painful boils-sores on [his] rectum due to prolonged period in [his] chair." *Id.*

"Plaintiff's need for replacement or repair of his prosthesis could be considered a 'serious medical need.'" *Roby v. Williams*, 2006 WL 8441953, at *3 (W.D. Mo. Aug. 28, 2006) (citing

9

*Newman v. Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974) (holding that the unavailability of prosthetic devices to inmates can constitute deliberate indifference); *Taylor v. Plousis*, 101 F. Supp.2d 255, 262-263 (D.N.J. 2000) (holding a pretrial detainee's ill-fitting and deteriorating prosthesis which caused pain and impaired mobility was a serious medical need); *Ford-Bey v. Sciubba*, 1987 WL 17565 (E.D. Pa. 1987) (holding inmate's allegations that prison officials ignored inmate's requests for repair of prosthetic leg stated a claim of deliberate indifference)). Further, "[a] medical condition that threatens one's ability to walk, even if ultimately reversible, is unquestionably a serious matter." *Kaufman v. Carter*, 952 F. Supp. 520, 527 (W.D. Mich. 1996).

At this stage of the litigation, plaintiff has adequately alleged that his ill-fitting prosthetic is a serious medical condition, that Dr. Lovelace knew the prosthetic did not fit, and Dr. Lovelace failed to respond to the issue, which caused painful sores and an inability to ambulate. As a result, the Court will direct the Clerk to serve process on Dr. Jerry Lovelace in his individual capacity.

**IV. Angela Adams**

Plaintiff alleges he saw defendant NP Angela Adams on June 10, 2020 after he asked the Warden for medical attention. Plaintiff complained about pain in his left leg and expressed fear that his osteosarcoma was no longer in remission. He relayed his medical history and showed her his port catheter for chemotherapy that was attached to his upper breast. Plaintiff states she did not examine him or provide a referral. Instead, she told him "someone would probably see [him] in the future." Compl. ¶ 14. Plaintiff responded by informing her he needed immediate medical attention but "[s]he just looked at [him] and said nothing." *Id.* According to plaintiff, he did not receive additional medical assistance until his tibia injury. Plaintiff further alleges that after his left leg was amputated, he suffered from ongoing infections but NP Adams would "deny [his] requests to find out why the infections [were] chronic." *Id.* ¶ 18.

10

Here, plaintiff asserts NP Adams saw plaintiff at a formal appointment, knew about his ongoing osteosarcoma, was informed of the pain it was causing him, but nevertheless failed to examine him, provide treatment, or alert a medical professional who could treat his severe condition. At this state of litigation, plaintiff's allegations state a claim for deliberate indifference. *Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015). Although further factual development may show that NP Adams was justified in her response, giving plaintiff the inferences to which he is entitled at the pleading stage, plaintiff has alleged enough to proceed on an Eighth Amendment claim against her. As a result, the Court will direct the Clerk to serve process on NP Angela Adams in her individual capacity.

**V. Karen Rose**

In January of 2022, plaintiff states he was folding clothes in Administrative Segregation when defendant NP Karen Rose approached him. Plaintiff alleges she told him: "You ought to sue that b-tch Adams, because she almost let you die. We all knew about your cancer from the day you got here. The employees working in Corizon Health at the St. Louis Justice Center and here all know each other. We were sent your file and we knew you were sick. All Adams is concerned about is brushing her hair and putting makeup on. Sue that bitch! You hear? She almost killed you." Plaintiff states he is bringing this action against her because, by her own admission, she knew of his condition and did not act.

Plaintiff does not allege that NP Rose ever treated or examined him. Because she never saw him, she does not have the personal involvement required for § 1983 liability. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution."). Because there are no allegations that NP Rose was directly involved with the decision not to treat his cancer, the complaint does not state a claim against her, and she must be dismissed.

### Motion for Appointment of Counsel

In civil cases, a self-represented litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if it is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the self-represented litigant to investigate the facts, the existence of conflicting testimony, and the ability of the self-represented litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After considering these factors, the Court finds the appointment of counsel is unwarranted at this time. The instant Opinion, Memorandum and Order grants plaintiff's motion to proceed *in forma* pauperis, and directs the Clerk of Court to issue process or cause process to issue on the complaint as to defendants Dr. Kent McNutt, Dr. Jerry Lovelace, and Nurse Practitioner Angela Adams in their individual capacities as to plaintiff's claims of deliberate indifference to his serious medical needs. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be unduly

complex. Thus, the Court will deny plaintiff's motion for appointment of counsel, but will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $17.90 within thirty (30) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendants Dr. Kent McNutt, Dr. Jerry Lovelace, and Nurse Practitioner Angela Adams in their individual capacities as to plaintiff's claim of deliberate indifference to his medical needs. Defendants shall be served in accordance with the service agreement the Court maintains with Corizon Health, Inc.

**IT IS FURTHER ORDERED** that plaintiff's claims brought against defendants Nurse Practitioners Brett Ferguson and Karen Rose are **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 4] is **DENIED** at this time without prejudice.

An Order of Partial Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 6th day of October, 2022.

                                                       HENRY EDWARD AUTREY
                                           UNITED STATES DISTRICT JUDGE